**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**Bruce Samuels** (State Bar No. 015996)
Direct Dial: 480.800.3530
Email: bsamuels@PSWMlaw.com

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 480.800.3527
Email: jsutton@PSWMlaw.com

**Benjamin Shattuck** (State Bar No. 038107)
Direct Dial: 480.800.3531
Email: bshattuck@PSWMlaw.com

**UB GREENSFELDER LLP**
200 West Madison Street
Suite 3300
Chicago, IL 60606

**Thadford A. Felton** (*pro hac vice* application forthcoming)
Direct Dial: 312.658.6623
Email: tfelton@ubglaw.com

*Attorneys for Bradley Wealth, LLC*

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Bradley Wealth, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Brandon Scott; Alex Cohen; Jacob Hall and Megan Hall; and 3Roots Wealth Partners, LLC, an Arizona limited liability company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Bradley Wealth, LLC ("Bradley Wealth"), an Arizona limited liability company, by and through its undersigned attorneys, states as its Complaint for Injunctive and Other Relief against Defendants Brandon Scott ("Scott"), Alex Cohen ("Cohen"), , Jacob Hall ("Hall"), Megan Hall, and 3Roots Wealth Partners, LLC ("3Roots"), an Arizona limited liability company, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendants pursuant to their wrongful, intentional, and wanton misappropriation of Bradley Wealth's confidential information

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

and trade secrets. Defendants Brandon Scott, Alex Cohen, and Jacob Hall (jointly, the "Individual Defendants") intentionally concocted a plan to steal Bradley Wealth's confidential information and clients, while they were still employed by Bradley Wealth and had access to its confidential information and trade secrets, to start up a direct competitor, Defendant 3Roots Wealth Partners, LLC ("3Roots" and, jointly with Individual Defendants, "Defendants"). After they resigned, the Individual Defendants gained unauthorized access to Bradley Wealth's computer systems to access and delete thousands of files and or emails that contained Bradley Wealth confidential information and trade secrets. Defendants have intentionally and unlawfully obtained, possessed, used and are using Bradley Wealth's confidential information and trade secrets to solicit its clients and grow 3Roots, while irreparably damaging and devastating Bradley Wealth. As soon as Bradley Wealth learned of Defendants' bad acts and their misuse of Bradley Wealth's confidential information and trade secrets, Bradley Wealth contacted the Individual Defendants and demanded they cease and desist their bad acts. Rather than ceasing their unlawful actions, Defendants doubled down, continued their unauthorized access to Bradley Wealth's computer systems (without Bradley Wealth's knowledge), and increased the pace of their brazen attempts to steal Bradley Wealth's customers.

2. Soon after its discovery of the theft, Bradley Wealth launched an intensive investigation to discover the extent of the Individual Defendants' betrayal and damage. That investigation revealed that the Individual Defendants knowingly stole Bradley Wealth's confidential information and trade secrets for their and 3Roots benefit before and after their resignations from Bradley Wealth.

3. Accordingly, Bradley Wealth brings this action seeking the Court's aid in stopping Defendants' willful exploitation of Bradley Wealth's confidential information and trade secrets, damages for Defendants' bad acts, and the costs for identifying, investigating, addressing, and attempting to remediate, to the extent it can, the damage that is in many cases irreparable.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

## THE PARTIES

4. Plaintiff Bradley Wealth is an Arizona limited liability company with its principal place of business at 16430 N. Scottsdale Road, Suite 230, Scottsdale, Arizona. Bradley Wealth was originally Bradley Wealth Management, LLC, a California limited liability company. Bradley Wealth is Bradley Wealth Management, LLC's successor entity, having all rights and claims of Bradley Wealth Management, LLC.

5. Defendant Brandon Scott is an individual that resides in Scottsdale, Arizona.

6. Defendant Alex Cohen is an individual that resides in Scottsdale, Arizona.

7. Defendant Jacob Hall is an individual that resides in Scottsdale, Arizona.

8. Defendant Megan Hall is Defendant Hall's spouse and is named solely for community property purposes. Megan Hall is a resident of Scottsdale, Arizona.

9. Defendant 3Roots Wealth Partners, LLC, is an Arizona limited liability company. Defendants Scott, Cohen, and Hall are members of 3Roots.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1331 because several of the causes of action arise under laws of the United States.

11. This Court may exercise personal jurisdiction over the Defendants because they reside in the state of Arizona.

12. Venue in the District of Arizona ("District") is proper pursuant to U.S.C § 1391(b)(2) because Bradley Wealth's principal place of business is in this District and Defendants reside in this district.

## FACTUAL ALLEGATIONS

13. Michael Bradley has been an investment advisor since 2002, and in 2009 he founded Bradley Wealth Management, now Bradley Wealth.

14. Bradley Wealth is a financial services company that provides a variety of services to its high-net-worth clients, including investment management, financial

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

planning, and estate planning advisory services, among other things.

15. Since 2009, Michael Bradley has developed the customer base of Bradley Wealth through his substantial investment of time, labor, money and resources.

16. Bradley Wealth gets its clients from existing clients or professional referral relationships with CPAs, estate planners, attorneys, and other similarly situated professionals.

17. After receiving a referral, Bradley Wealth puts in substantial time, effort, and money to win the new client to Bradley Wealth.

18. After Michael Bradley receives the introduction to the potential client, he begins a discovery process, where the potential client relationship starts to be built.

19. Michael Bradley, as head of Bradley Wealth, meets with the potential client to listen and understand what is most important to the potential client, such as their aspirations, values, and goals.

20. Based on the information gleaned during the discovery stage, and once the client commits to Bradley Wealth, it designs a financial plan that supports the potential client's retirement, career transitions, estate planning, and any entrepreneurial goals.

21. This process includes an analysis of every facet of the potential client's financial life, including goals, risk tolerances, and resources.

22. Bradley Wealth believes a holistic approach allows it to build an investment plan that gives the potential client a path to achieve their goals.

23. After gaining a deep understanding of the client and the client's assets and aspirations, Bradley Wealth creates a custom wealth plan tailored to the client's individual goals on its software, MoneyGuidePro.

24. After the plan is in motion, Bradley Wealth remains very actively engaged in maintaining the client's unique profile, including monitoring the progress of client's goals and adjusting as needed.

25. Through regular updates and communications, Bradley Wealth helps the clients stay aligned with their goals, adapt to life changes, and navigate shifting market

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

conditions to ensure they remain on track to achieve their life's vision.

26. In addition, Bradley Wealth maintains client relationships by spending up to $150,000 a year on client events, dinner, golf, travel, and other opportunities.

27. Up until September 8, 2025, Bradley Wealth had seven employees.

28. When Bradley Wealth engages with a client, Bradley Wealth and that client enter into a variety of agreements, including an Investment Advisory Agreement ("IAA"), Financial Planning Agreement ("FPA"), and a Confidential Privacy Policy. Bradley Wealth does this to make sure it complies with federal and state regulations to protect client information from non-associated third parties.

29. The IAA contains the following confidentiality provision:

> **Confidentiality.** Except as otherwise agreed to in writing or as required by law, Advisor will keep all information regarding Client's personal and financial affairs strictly confidential. Client authorizes and empowers Advisor to give a copy of Agreement to any Custodian or other party to transaction for Account(s) as evidence of the Advisor's authority to issue instructions, request information about the Account, and to act for Client.

30. The FPA contains the following confidentiality provision:

> **Confidentiality.** Except as required by applicable law, rule, or regulation, or in order to perform the Planning Services contemplated by this Agreement, Advisor will keep all information regarding Client's personal information and financial affairs strictly confidential and both parties agree to treat information provided in connection with this Agreement as confidential.

31. All employees of Bradley Wealth are required to enter into confidentiality agreements with the Company in order to protect its trade secrets and confidential information and its clients' confidential information.

**The Hiring of Scott, Cohen and Hall and Their Agreement to Protect Bradley Wealth's Confidential and Trade Secret Information**

32. On or about August 28, 2017, Defendant Scott signed an offer letter accepting the position of *Portfolio and Trading Specialist* with Bradley Wealth ("Scott Offer Letter"). A copy of the Scott Offer Letter is attached as **Exhibit A**.

33. On or about June 15, 2020, Defendant Cohen signed an offer letter

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

accepting the position of *Wealth Plan Design Specialist – Associate Wealth Advisor* with Bradley Wealth ("Cohen Offer Letter"). A copy of the Cohen Offer Letter is attached as **Exhibit B**.

34. On or about August 21, 2020, Defendant Hall signed an offer letter accepting the position of *Wealth Advisor* with Bradley Wealth ("Hall Offer Letter"). A copy of the Hall Offer Letter is attached as **Exhibit C**. (The Scott Offer Letter, Cohen Offer Letter, and Hall Offer Letter are collectively referred to as the "Offer Letter Agreements.")

35. The Offer Letter Agreements contained the following confidentiality provision:

> *In the course of your employment with Bradley Wealth you will have access to confidential and proprietary information ("Confidential Information") relating to Bradley Wealth, its affiliates, and customers, and their respective businesses, operations, technology plans, trade secrets, software, and infrastructure or other matters that are not publicly known or used outside of Bradley Wealth, which are integral to the operations.* ***Such Confidential Information will be disclosed to you in confidence and only for the use of Bradley Wealth. You have an obligation to keep such Confidential Information confidential at all times during and after your employment with the Company and you will not make use of such Confidential Information on your own behalf, or on behalf of any third party.*** *You recognize and acknowledge that all financial information concerning any customers, products or financial results of the Company or of its divisions, and affiliates, is strictly confidential, and you shall not, at any time before or after termination of your employment, disclose to anyone any such information or any part thereof, for any reason or purpose whatsoever except to the extent that such information is already otherwise publicly available or to the extent such disclosure is compelled by law. You hereby acknowledge the particular value to the Company of Company's Confidential Information, the loss of which cannot be reasonably or adequately compensated by damages. Therefore, you expressly agree that the Company, in addition to any other rights or remedies that the Company shall possess, shall be entitled to injunctive and other equitable relief to prevent or to remedy a breach of this paragraph by you, without the necessity of posting any bond.*

*See* Offer Letter Agreements, Exhibits A, B, and C (emphasis added).

36. In their Offer Letter Agreements, the Individual Defendants acknowledged

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

that all client relationships of Bradley Wealth belonged to Bradley Wealth and that all clients were clients of Bradley Wealth. Specifically, in the Offer Letter Agreements, the Individual Defendants agreed that "*all client relationships generated while an employee of Company, are Company's clients.*" *See* Offer Letter Agreements, Exhibits A, B, and C.

37. In their Offer Letter Agreements, Individual Defendants also agreed that, during their employment with the Company, they would not solicit any Company employees to work for any other person or business. Specifically, in the Offer Letter Agreements, the Individual Defendants agreed:

> *During your employment with Company, and following your employment with the Company, you shall not directly or indirectly, solicit or attempt to solicit any employee of the Company, or any division, affiliate or related company thereof, to terminate their employment with the Company or any division or affiliate, or to work for any other business, person or company.*

*See* Offer Letter Agreements, Exhibits A, B, and C.

38. Finally, in their Offer Letter Agreements, the Individual Defendants agreed that, during their employment with the Company, they would not compete with Bradley Wealth. Specifically, in their Offer Letter Agreements, the Individual Defendants agreed:

> *During your employment with the Company, you shall not, directly or indirectly, work for, or engage, or participate in the business of, a company competing with Bradley Wealth without the prior written consent of the CEO of Bradley Wealth. During your employment, you will avoid business dealings with other parties that would create a real or apparent conflict of interest.*

*See* Offer Letter Agreements, Exhibits A, B, and C.

39. In addition, Bradley Wealth had an Employee Handbook that was provided to each of its employees, including Individual Defendants, that contained a Non-Disclosure/Confidentiality Provision that provided:

> *The Protection of confidential information and trade secrets is essential both for Bradley Wealth and its Stakeholders' future security. Confidential information is any and all information*

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

> *disclosed to or known by Stakeholders because of employment with the company that is not generally known to people outside the company about its business, or its affiliates, vendors, clients, and perhaps even fellow Stakeholders. All information you access, collect, or receive regarding a client, vendor, cost information, internal systems, processes, and procedures is considered confidential.*
>
> *A Stakeholder who improperly uses or discloses trade secrets or confidential business information will be subject to disciplinary action up to and including termination of employment and legal action, even if the Stakeholder does not actually benefit from the disclosed information. The use of confidential information and trade secrets is permitted at work only as necessary to perform your duties. You must not under any circumstances reveal confidential information or trade secrets outside the Company without prior approval by the Company.*
>
> *Attached to this Handbook is a Non-Disclosure and Confidentiality Agreement. Please sign and return the form to the Company.*

A copy of the Employee Handbook is attached as **Exhibit D**.

40. Individual Defendants signed an acknowledgment that they had received the Employee Handbook and that they had "read it, understand it, and agree to abide by the policies and procedures contained in the Handbook."

41. Bradley Wealth also had each of its employees, including each of the Individual Defendants, sign the Non-Disclosure and Confidentiality Agreement that was attached to the Employee Handbook.

42. The Non-Disclosure and Confidentiality Agreement provided in part as follows:

> ***Ownership of Proprietary Information.*** *All right, title and interest of every kind and nature whatsoever in and to the Proprietary Information discussed, developed, secured, obtained or learned by Stakeholder from the Company shall be the sole and exclusive property of the Company for any purposes or uses whatsoever. Stakeholder acknowledges that the Company owns all rights, title and interest in and to the Proprietary Information.*
>
> ***Client Files.*** *As between any Stakeholder, current or former, and the Company, all records and files relating or connected in any manner whatsoever with the customers or clients of the Company shall be the exclusive property of the Company, regardless of: (i) who initially prepared or acquired the records or files; and (ii) the business origination designation*

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

> *for each client. Nothing in this provision is intended to violate any client's right to obtain, transfer, or inspect his or her file(s) in accordance with Arizona law. Nothing in this provision is intended to restrict a former Stakeholder's lawful right to compete with the Company.*
>
> ***Disclosure of Proprietary Information.*** *Stakeholder shall not at any time communicate or disclose to any person unaffiliated with the Company, any Proprietary Information, without the prior written consent of the Company. Stakeholder shall not, without the prior written consent of the Company, retain any original memoranda, notes, plans, sketches, data or other documents, papers or records of any kind related to research, development, products or business of the Company or any of its related entities or related to any Proprietary Information, all of which Stakeholder acknowledges are the exclusive property of the Company. Stakeholder shall surrender to the Company, upon the Company's reasonable request, any such original Proprietary Information and all copies thereof in Stakeholder's possession or control.*
>
> ***Confidentiality Obligation Survives Employment.*** *Stakeholder's obligation to maintain the confidentiality and security of Proprietary Information remains even after the Stakeholder's employment with the Company is terminated for any reason.*

*See* Non-Disclosure and Confidentiality Agreements signed by Individual Defendants attached as **Exhibits E, F and G.**

**Bradley Wealth's Professional Development of Scott, Cohen, and Hall and Their Access to Bradley Wealth's Confidential and Trade Secret Information**

43. When the Individual Defendants became employees of Bradley Wealth, none of the Defendants had any customers or accounts.

44. As employees of Bradley Wealth, Bradley Wealth provided the Individual Defendants access to its clients and confidential information and trade secrets which included, but is not limited to, client lists, client contact information, client portfolio risk, client portfolio balances by amounts and types, contact notes (relevant information pertaining to the client's history), written agreements review (client's signed financial planning, client's investment advisory, and client's investment policy agreements), client tax documents, client trust documents, client account reports, client workflows, client opportunities tracker, MoneyGuidePro financial plan review summaries, compliance

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

folders (client authorizations and agreements), client investment history and last activity, "Know Your Client" section (first review, last review, and next review), and other personally identifiable financial information (collectively, "Bradley Wealth Trade Secret Information").

45. Bradley Wealth Trade Secret Information was also confidential information ("Bradley Wealth Confidential Information").

46. As employees of Bradley Wealth, Bradley Wealth provided the Individual Defendants access to Bradley Wealth Confidential Information, including Bradley Wealth trade secrets, and provided training referrals and resources to support their professional and business development.

47. In addition, Bradley Wealth also paid for the Individual Defendants' licensing fees, seminar and conference fees, and related travel expenses, among other things.

48. Bradley Wealth Trade Secret and Confidential Information was kept in three separate databases: Orion/Ascent, Redtail CRM, and NetDocuments.

49. Specifically, the Orion/Ascent Database contained Bradley Wealth's clients' portfolio performance and portfolio performance history and stores, organizes, and archives all important client/customer information and pertinent details pertaining to anything and everything involving a client or potential client relationship. Bradley Wealth's clients can access the Orion/Ascent Database to review information regarding their investments.

50. Redtail CRM is a cloud-based customer relationship management system designed for financial professionals, including wealth managers and financial advisors ("Redtail CRM Database").

51. Bradley Wealth uses Redtail CRM as its primary management tool and portal for portfolio solutions and managing all client positions, holdings, and performance, among other things.

52. Bradley Wealth's third client management database, NetDocuments, is a

cloud-based platform that serves as an intelligent document management system that provides features for secure document and email organization, workflow automation, and collaboration ("NetDocuments Database").

53. Bradley Wealth stored all client onboarding, engagement, compliance information, fee agreements, and other confidential information in the NetDocuments Database.

54. The Bradley Wealth customer information in the Orion/Ascent, Redtail CRM, and NetDocuments Databases was confidential.

55. Access to the Orion/Ascent, Redtail CRM, and NetDocuments Databases were username and password protected, with each employee having his or her own username and unique password. (The Bradley Wealth Orion/Ascent, Redtail CRM, and NetDocuments Databases are collectively referred to as the "Bradley Wealth Confidential Databases".)

56. As employees of Bradley Wealth, Bradley Wealth provided Individual Defendants access to its customers, customer relationships, customer financial information, customer investment goals, customer financial statements, customer investment history, among other things (collectively, "Confidential Customer Information"). This access included access to the Bradley Wealth Confidential Databases.

57. Michael Bradley introduced the Individual Defendants to Bradley Wealth's customers so that they could provide financial, wealth management and other services to its customers.

58. Bradley Wealth provided each of the Individual Defendants with a username and unique password that allowed them to access the Bradley Wealth Confidential Databases.

59. The Individual Defendants were only supposed to access and use the Bradley Wealth Confidential Databases for business purposes related to Bradley Wealth.

60. While Bradley Wealth's platform, training, and business development of

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

the Individual Defendants allowed them to bring in a few friends and family as clients, the business model of Bradley Wealth was for Individual Defendants to service Bradley Wealth's clients that had been developed, cultivated, and serviced by Michael Bradley since 2009.

61. Further, during their employment with Bradley Wealth, the Individual Defendants did not bring a significant number of clients to Bradley Wealth. Defendant Scott brought his father as a client; Defendant Hall brought his father-in-law as a client; and Defendant Cohen brought his family as clients. Otherwise, all of the customers that the Individual Defendants worked with were clients of Bradley Wealth that Michael Bradley had procured for Bradley Wealth through substantial time, expense, and effort.

62. On or about December 8, 2022, Defendants Cohen and Scott became members of Bradley Wealth. Defendant Scott contributed $282,750 to purchase 3,000 units, or 3%, of Bradley Wealth, and Defendant Cohen contributed $188,500 to purchase 2,000 units, or 2%, of Bradley Wealth. While Defendant Hall was not offered an opportunity to become a member of Bradley Wealth, Michael Bradley anticipated offering him membership in the future.

**Defendants' Plot to Steal Bradley Wealth's Trade Secrets and Confidential Information, Interfere with Its Client Relationships, and Take Its Clients**

63. In or about June of 2025, Defendants started working together to develop a plan to resign from Bradley Wealth, form a competing business, steal Bradley Wealth Confidential Information, and use Bradley Wealth Confidential Information to solicit Bradley Wealth's clients to join their new competing company.

64. In June of 2025, Individual Defendants started soliciting employees of Bradley Wealth to leave Bradley Wealth and join them at the new company that they were going to form.

**65.** In addition, the Individual Defendants used at least one Bradley Wealth employee to create email signatures for them at their new company and to create a logo for their new company. This was done during business hours at Bradley Wealth. In

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

addition, the Individual Defendants offered this same employee, who was a *Client Care Specialist* that oversaw the Redtail CRM Database, a position at the company that they were going to form.

66. In August of 2025, the Individual Defendants urged a portfolio specialist at Bradley Wealth to resign and join their new company.

67. On or about August 4, 2025, while still employed by Bradley Wealth, and unbeknownst to Bradley Wealth, Individual Defendants formed 3Roots Wealth Partners, LLC, an Arizona limited liability company ("3Roots").

68. The Individual Defendants did not tell Michael Bradley that they were forming or had formed 3Roots.

69. 3Roots was formed by the Individual Defendants to directly compete with Bradley Wealth as both 3Roots and Bradley Wealth offer brokerage and investment advisory services for their customers and perform the same or substantially the same functions connected with the financial services and investment industry.

**70.** In August of 2025, one or more of the Individual Defendants accessed Bradley Wealth's "Tops Down" Report, which contained the full name of each client and the amount of each client's investment portfolio with Bradley Wealth.

71. On September 9, 2025, one of the Individual Defendants searched Google for information on how to completely wipe their computer – "completely+computer+ wipe."

72. On September 9, 2025, while on a business trip to Colorado to meet with a Bradley Wealth customer, Michael Bradley received a telephone call from an employee at Bradley Wealth telling him that the Individual Defendants were conspiring together to leave Bradley Wealth.

73. Immediately after receiving the above call, Michael Bradley called the Individual Defendants and asked them if they were leaving Bradley Wealth and, in response, the Individual Defendants told Bradley that they were immediately resigning from Bradley Wealth.

74. After getting off the phone with Michael Bradley on September 9, 2025, and after having resigned, the Individual Defendants gained unauthorized access to Bradley Wealth's offices between 7:00 p.m. and 9:00 p.m. and accessed Bradley Wealth files containing Bradley Wealth Confidential Information.

75. While the Individual Defendants were in the office on the evening of September 9, 2025, one or more of the Individual Defendants accessed the following files of Bradley Wealth, all of which contain trade secrets and confidential information:

Jacob Hall's computer:

a. Accredited Certification.lnk

b. American Funds Statement - Carlson-Richison, Tiffany.lnk

c. BWM Alternative Risk Disclosure.lnk

d. iCapital WorldQuant Millennium Subscription Agreement - Lowry, Richard & Kelly.lnk

e. Private Investment Form (WorldQuant).lnk

Brandon Scott's computer:

f. backup.lnk

g. Current_Investments_08_15_2025.csv

h. Document1((Unsaved-9_9_2025 7_11_17 PM)).lnk

i. July 2025 FP Import_Pershing.csv (this file contains a master list by client of all financial planning fees collected by Bradley Wealth on a monthly basis)

j. ms-settingswindowsupdate.lnk

k. q3_2025__8020_model_portfolio_holdings.csv (this file is Bradley Wealth's proprietary investment/asset allocation model for each of its clients)

l. SEPT 2025 FP FEES (FIRST DRAFT).lnk

m. September 2025 FP Fees_Altruist.csv (this file contains a master list by client of all financial planning fees collected by Bradley Wealth on a monthly basis)

n. September 2025 FP Import_Pershing.csv (this file contains a master list by client of all financial planning fees collected by Bradley Wealth on a monthly basis)

PSWM
Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

o. September 2025 FP Import_Pershing.lnk (this file contains a master list by client of all financial planning fees collected by Bradley Wealth on a monthly basis)

p. September 2025 FP Fees.lnk

q. SlickGridExport_Bradley - 2025-08-06T130204.380.csv (this kind of file (and the files with similar names below) list client IDs, client names, client emails, client dates of birth and the current value of client accounts)

r. SlickGridExport_Bradley - 2025-08-12T100907.626.csv

s. SlickGridExport_Bradley - 2025-08-26T153613.882.csv

t. SlickGridExport_Bradley - 2025-08-27T142209.359.csv

u. SlickGridExport_Bradley - 2025-09-08T093845.731.csv

v. SlickGridExport_Bradley - 2025-09-08T095137.209.csv

w. Transactions_07_29_2025 (1).csv

x. SlickGridExport_Bradley - 2025-09-09T102931.185.lnk

Alex Cohen's computer:

y. Document1((Unsaved-9_9_2025 7_16_16 PM)).lnk

z. 3 Roots Wealth Partners_Sample Disclaimer Language ((Unsaved-9_9_2025 7_07_43 PM)).lnk

aa. 1933_iCapitalIncomeO...unitiesFundL.P._...FamilyTr...stJ…nS.L…S._473687_TaxK1(Final)_20241231.lnk

bb. backup.lnk

76. On September 9, 2025, one or more of the Individual Defendants accessed emails containing the Q2 auditing reports for certain customer accounts.

77. On September 9, 2025, one or more of the Individual Defendants accessed a Microsoft Excel document titled "Account Breakdown – Q1 2025 ROCK (BS & ME).xlsx" which contained confidential customer account breakdowns with their identifying information, account values, and customer notes, among other information.

78. In addition, on the evening of September 9, 2025, one or more of the Individual Defendants accessed a filed named "3 Roots Wealth Partners Sample Disclaimer Language."

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

79. When Michael Bradley returned from his trip to Denver on the evening of September 9, 2025, he went to the office and found Individual Defendants' resignation letters on his desk.

80. In addition, Michael Bradley subsequently learned that Defendant Scott had deleted himself from the Orion/Ascent Database and, as a result, deleted all of Bradley Wealth's shared folders and files which housed its client historical data, including invoices, compliance documents, and other Bradley Wealth Trade Secret Information, which are critical to Bradley Wealth running its business on a daily basis. As a result, Bradley Wealth's clients no longer have access to some of their investment information.

81. In addition, Bradley Wealth is unable to locate client custom reports that Defendant Scott had designed for Bradley Wealth.

82. As set forth above, the Orion/Ascent Database houses, stores, organizes, and archives all important client/customer information and pertinent details pertaining to anything and everything involving a client or potential client relationship, including the Bradley Wealth Trade Secret Information custom reports for client overview, client holdings, and client performance that Defendant Scott had designed for Bradley Wealth.

83. However, Bradley Wealth is unable to locate client custom reports that Scott had designed for Bradley Wealth.

84. After resigning from Bradley Wealth (if not before), beginning on September 10, 2025 (if not earlier), the Individual Defendants began soliciting Bradley Wealth customers to move their business from Bradley Wealth to Individual Defendants and 3Roots.

85. As of the filing of this Complaint, Bradley Wealth is aware that the Defendants have contacted over 100 of its clients.

86. Defendants have called Altruist and Pershing Customer Support, a custodian of assets held by Bradley Wealth's customers, with Bradley Wealth customers on the phone and asked them to remove Michael Bradley as that customer's investment

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

advisor and transfer that customer's files to Defendant 3Roots.

87. Shortly after the Individual Defendants left Bradley Wealth, Michael Bradley took certain steps to make sure the Individual Defendants' access to Bradley Wealth's computer systems and databases was terminated by, among other things, disabling their passwords.

88. On or about September 16, 2025, Bradley Wealth hired a forensic expert to review Bradley Wealth's computer systems and databases to ascertain what files the Individual Defendants had illegally accessed.

89. The forensic expert discovered that not only had the Individual Defendants accessed files on September 9, 2025, after their resignation, but that they had gained unauthorized access to Bradley Wealth's computer system as late as September 29, 2025, at which point Bradley Wealth believes that it was finally able to shut off their unauthorized access.

90. On September 19, 2025, Bradley Wealth's counsel sent a letter to each of the Defendants outlining Bradley Wealth's concerns and their violation of their Agreements and the immediate need to cease and desist their conduct ("Cease and Desist Letter"). *See* Cease and Desist Letter attached as **Exhibit H**. The Cease and Desist Letter also contained a litigation hold.

91. In the Cease and Desist Letter, Bradley Wealth's counsel reminded Individual Defendants of their confidentiality obligations to Bradley Wealth and its customers, that they had agreed to keep such information confidential at all times, and that they had agreed not to use such confidential information on their behalf or on behalf of any third party.

92. Defendants ignored the Cease and Desist letter and continued to use Bradley Wealth Trade Secret and Confidential Information to contact and solicit Bradley Wealth's customers.

93. In fact, following the Cease and Desist Letter, Defendants seemed to increase the frequency and intensity of their bad acts and the Individual Defendants

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

increased their calls to Bradley Wealth Customers. In addition, the Individual Defendants reset their passwords and continued their unauthorized access to Bradley Wealth's computer systems, accessing Bradley Wealth Confidential Information and deleting over 6,000 files and/or emails.

94. On at least three occasions, pre- and post-Cease and Desist Letter, the Individual Defendants have contacted Altruist and told them, with Bradley Wealth clients on the phone, to remove Bradley Wealth and Michael Bradley as the client's advisor.

95. Thus far, Bradley Wealth has lost in excess of $50,000,000 in managed wealth due to Defendants' bad acts.

96. Defendants' willful and intentional actions as described above have injured and continue to injure Bradley Wealth. Bradley Wealth has lost customers and has lost revenue generated by managing assets for customers that Defendants have lured away, Defendants have made negative statements about Bradley Wealth and Michael Bradley to Bradley Wealth's customers, and Defendants have diminished Bradley Wealth's business reputation and goodwill.

**FIRST CAUSE OF ACTION**
**(Defend Trade Secrets Act, 18 U.S.C. § 1836 – All Defendants)**

97. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

98. Bradley Wealth's Trade Secret Information includes client lists, client contact information, client portfolio risk, client portfolio balances by amounts and types, contact notes (relevant information pertaining to the client's history), client account reports, client workflows, client opportunities tracker, MoneyGuidePro financial plan review summaries, compliance folders, client investment history and last activity, "Know Your Client" section (first review, last review, and next review), and personally identifiable financial information. (collectively, "Trade Secrets").

99. Bradley Wealth took reasonable measures to protect the secrecy of its

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

Trade Secrets.

100. Bradley Wealth limited internal access to its Trade Secrets only to those that had a need to know in order to perform their duties.

101. Bradley Wealth limited internal access to its Trade Secrets by utilizing a password protected authentication system.

102. Bradley Wealth utilized reasonable efforts to maintain the secrecy of its Trade Secrets.

103. Bradley Wealth derives substantial economic and competitive advantage from its Trade Secrets.

104. Defendants' actions complained of herein constitute a willful and malicious misappropriation of trade secrets as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA").

105. Defendants' possession and/or use of Bradley Wealth's Trade Secrets have given and will continue to give Defendants an unfair competitive advantage over Bradley Wealth because they can use the Trade Secrets to develop new business from Bradley Wealth's customers without having to invest the time, labor, and capital that Bradley Wealth made to develop and compile that information.

106. Bradley Wealth's Trade Secrets legally qualify and are protected as trade secrets within the meaning of DTSA.

107. The Trade Secrets derive independent economic value from not being generally known, and not being readily ascertainable by proper means, to the public or other persons who could obtain commercial or economic value from their disclosure.

108. Bradley Wealth took reasonable steps to maintain the secrecy of its Trade Secrets. However, Defendants had access to the Trade Secrets through their employment with Bradley Wealth and, acting in concert, misappropriated them for their own benefit both before and after their terminations.

109. As a direct and proximate result of the misappropriation of Trade Secrets, Bradley Wealth has been damaged and will continue to be damaged in an amount to be

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

proven at trial.

110. Defendants' conduct was willful and malicious and, therefore, in addition to actual damages, Bradley Wealth is entitled to recover exemplary, compensatory, and punitive damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

111. Bradley Wealth is entitled to injunctive relief.

112. Bradley Wealth is entitled to recover attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D).

**SECOND CAUSE OF ACTION**
**(Computer Fraud and Abuse Act – All Defendants)**

113. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

114. Shortly after resigning their position at Bradley Wealth, Individual Defendants accessed the Bradley Wealth computer systems without authorization or exceeding authorization after they resigned from Bradley Wealth.

115. A forensic examination of Bradley Wealth's computer systems reveals that after they resigned, between September 9 and September 29, 2025, the Individual Defendants gained unauthorized access to Bradley Wealth's computer systems. During that time, there were 7,983 activities recorded against the Individual Defendants' accounts, including, but not limited to, repeated user logins, access to hundreds of emails and attachments and the deletion of thousands of emails from deleted items folders. and accessed or opened hundreds of emails and attachments, including client-facing communications; accessed, modified and deleted dozens of documents; and deleted over 6,000 emails from the "deleted" email folder.

116. As their employer, 3Roots is vicariously liable for Individual Defendants' actions, because it affirmatively urged and encouraged Individual Defendants to access the Bradley Wealth computer systems.

117. As a direct and proximate result of Individual Defendants' misconduct, including Bradley Wealth's efforts to identify, investigate, address, and, to what extent it

could, remediate such misconduct, Bradley Wealth has been damaged in an amount to be determined at trial, and in all events in excess of $5,000. Among other things, Bradley Wealth has expended substantial staff time and incurred legal and consultant fees in response to the actions Individual Defendants took while employed by 3Roots and at its encouragement.

**THIRD CAUSE OF ACTION**
**(Arizona's Uniform Trade Secrets Act, A.R.S. § 44-401, *et seq.* – All Defendants)**

118. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

119. Defendants' actions complained of herein constitute a willful and malicious misappropriation of trade secrets as defined by the Arizona Uniform Trade Secrets Act, A.R.S. § 44-401, *et seq*. ("AUTS")

120. Bradley Wealth's Trade Secrets legally qualify and are protected as trade secrets within the meaning of AUTS.

121. The Trade Secrets derive independent economic value from not being generally known, and not being readily ascertainable by proper means, to the public or other persons who could obtain commercial or economic value from their disclosure.

122. Bradley Wealth took reasonable steps to maintain the secrecy of the Trade Secrets. However, Individual Defendants had access to the Trade Secrets through their employment with Bradley Wealth and, acting in concert, misappropriated them for their own benefit and for the benefit of 3Roots.

123. As a direct and proximate result of the misappropriation of Trade Secrets, Bradley Wealth has been damaged and will continue to be damaged in an amount to be proven at trial.

124. Defendants' conduct was willful and malicious and, therefore, in addition to actual damages, Bradley Wealth is entitled to recover exemplary damages pursuant to A.R.S. § 44-403.

125. Bradley Wealth is entitled to injunctive relief.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

PSWM
Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

126. Bradley Wealth is entitled to recover attorneys' fees and costs pursuant to A.R.S. § 44-404.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract – Defendants Scott, Cohen, and Hall)**

127. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

128. As set forth in their Offer Letter Agreements and Non-Disclosure and Confidentiality Agreements (collectively, "Agreements"), Individual Defendants agreed to maintain the confidentiality of Bradley Wealth Confidential Information and agreed not to use such information on their behalf or on behalf of any third party. Individual Defendants further agreed that all client relationships generated while employed by Bradley Wealth were Bradley Wealth's clients.

129. As set forth above, Individual Defendants have breached their Agreements.

130. As a result of Individual Defendants' breach of their Agreements, Bradley Wealth has suffered and continues to suffer damages in the form of lost customers, lost revenue and business reputation, and goodwill.

131. Bradley Wealth has fully performed its obligations under each of Individual Defendants' Agreements.

132. Individual Defendants have breached the Agreements and Bradley Wealth is entitled to injunctive relief.

133. Bradley Wealth seeks recovery of its attorneys' fees and costs as authorized by A.R.S. §§ 12-341.01 and 12-341.

**FIFTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty – Individual Defendants Scott, Cohen, and Hall)**

134. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

135. As employees of Bradley Wealth, the Individual Defendants owed Bradley Wealth duties of loyalty and care.

136. The Individual Defendants' actions in using Bradley Wealth's resources to

solicit its customers, steal Bradley Wealth Confidential Information and Bradley Wealth's Trade Secrets, and use Bradley Wealth Confidential Information and Bradley Wealth's Trade Secrets to compete against it was and is a breach of their fiduciary duties of loyalty and care.

137. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, Bradley Wealth has suffered and continues to suffer damage in the form of lost customers, lost revenue and business reputation, and goodwill.

138. Bradley Wealth is entitled to injunctive relief and disgorgement.

**SIXTH CAUSE OF ACTION**
**(Aiding and Abetting Breach of Fiduciary Duty – Defendant 3Roots)**

139. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

140. The Individual Defendants created and were employees of 3Roots.

141. The Individual Defendants owed Bradley Wealth fiduciary duties of loyalty and due care, both during and after their employment, not to use Bradley Wealth Confidential Information and Trade Secrets, other than for Bradley Wealth's business.

142. As owners of 3Roots and its representatives, 3Roots had the knowledge that the Individual Defendants had been employed by Bradley Wealth and therefore owed Bradley Wealth fiduciary duties and further knew that in disclosing Bradley Wealth Confidential Information and Trade Secrets to 3Roots, the Individual Defendants were breaching their fiduciary duties.

143. As owners of 3Roots, the Individual Defendants acted in the interests of 3Roots and implicitly and explicitly with 3Roots' encouragement and substantial assistance by inducing, encouraging, requesting, incentivizing, and causing the Individual Defendants to provide 3Roots with Bradley Wealth Confidential Information and Trade Secrets for 3Roots to use in its business and to compete with Bradley Wealth.

144. As a direct and proximate result of the Individual Defendants' breach and 3Roots' aiding and abetting thereof, Bradley Wealth has been damaged in an amount to

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

be determined at trial.

145. Bradley Wealth is entitled to injunctive relief.

**SEVENTH CAUSE OF ACTION**
**(Tortious Interference with Business Expectancies and Relationships – All Defendants)**

146. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

147. Bradley Wealth has ongoing profitable and meaningful business and contractual relationships with its clients.

148. Brady Wealth works to constantly nurture its relationships with its clients in order to increase its probability of future business with its clients.

149. The Defendants were and are aware of Bradley Wealth's business and contractual relationships with its clients.

150. The Defendants intentionally engaged in the wrongful acts set forth above to cause Bradley Wealth's clients to end their business and contractual relationships with Bradley Wealth and enter into new business relationships and contracts with the Individual Defendants and Defendant 3Roots.

151. Individual Defendants intentionally engaged in these acts so that they could usurp Bradley Wealth's business and contractual relationships for themselves and 3Roots.

152. As a result of Defendants' intentional interference, Bradley Wealth has been damaged in that it has lost business and contractual relationships with several of its customers, including possible future business relationships with these clients.

153. Bradley Wealth is entitled to injunctive relief.

**EIGHTH CAUSE OF ACTION**
**(Conversion – All Defendants)**

154. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

155. Bradley Wealth owned the proprietary and Confidential Information and

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

Trade Secrets set forth above.

156. The Individual Defendants intentionally stole Bradley Wealth Confidential Information and Trade Secrets with full knowledge that it would severely and irreparably damage Plaintiff.

157. In stealing Bradley Wealth Confidential Information and Trade Secrets, the Individual Defendants have converted that information for their own purposes and have exercised control and dominion over Bradley Wealth Confidential Information and Trade Secrets.

158. Due to the Individual Defendants' control and dominion over Bradley Wealth Confidential Information and Trade Secrets, Bradley Wealth has lost control and, indeed, access to certain Confidential Information and Trade Secrets.

159. Bradley Wealth has demanded that the Individual Defendants return its wrongfully converted Bradley Wealth Confidential Information and Trade Secrets to it, but the Individual Defendants have refused to do so.

160. As a direct and proximate cause of the Individual Defendants' conversion of Bradley Wealth Confidential Information and Trade Secrets, Plaintiff has been damaged in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**
**(Civil Conspiracy – Individual Defendants Scott, Cohen, and Hall)**

161. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

162. Individual Defendants knowingly and willfully conspired and agreed among themselves to form a competing business, to steal Bradley Wealth Trade Secrets and Confidential Information and to use such Trade Secrets and Confidential Information to unlawfully compete against Bradley Wealth and solicit its clients to end their customer relationships with Bradley Wealth.

163. Each Individual Defendant committed at least one overt act in furtherance of their civil conspiracy. These acts in furtherance of the conspiracy included: (1)

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

misappropriating Bradley Wealth's Trade Secrets; (2) stealing Bradley Wealth Confidential Information; (3) using Bradley Wealth Trade Secrets and Confidential Information to solicit Bradley Wealth's customers; and (4) Defaming Bradley Wealth in their effort to steal Bradley Wealth's customers.

164. Individual Defendants intentionally engaged in these acts in furtherance of the conspiracy so that they could usurp Bradley Wealth's business and contractual relationships for themselves with full knowledge the acts would damage Bradley Wealth.

165. As a result of Individual Defendants' conspiracy, Bradley Wealth has lost customers and has lost revenue generated by managing assets for customers that Individual Defendants have lured away, Individual Defendants have made negative statements about Bradley Wealth and Michael Bradley to Bradley Wealth's customers, and Individual Defendants have diminished Bradley Wealth's business reputation and goodwill.

**TENTH CAUSE OF ACTION**
**(Unjust Enrichment – All Defendants)**

166. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

167. This claim is pled in the alternative.

168. Defendants improperly and without justification intentionally retained various assets that rightfully belong to Bradley Wealth, including Bradley Wealth Confidential Information and Trade Secrets.

169. Through Defendants' alleged conduct, Plaintiff has been unjustly injured, and Defendants have been unjustly enriched.

170. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

171. Defendants' conduct was willful, purposeful, in bad faith, and intended to harm Plaintiff.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254
PSWM

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bradley Wealth, LLC, requests that this Court enter judgment against Defendants as follows:

(a) A temporary restraining order, preliminary, and permanent injunction barring Individual Defendants and Defendant 3Roots, as well as its officers, employees and agents, from possessing or using Bradley Wealth Confidential Information and Trade Secrets and requiring the Defendants to return Bradley Wealth Confidential Information and Trade Secrets;

(b) A temporary restraining order, preliminary, and permanent injunction barring Individual Defendants and Defendant 3Roots, as well as its officers, employees and agents, from contacting or soliciting any of Bradley Wealth's clients;

(c) Order Defendants to turn over all of their devices so that a comprehensive data remediation may be performed on those devices to determine what other of Bradley Wealth Confidential Information and Trade Secrets have been accessed, stolen, modified, and/or deleted by Defendants;

(d) A seizure order providing for seizure from Defendants of Bradley Wealth Trade Secrets insofar as necessary to prevent Defendants from propagating or disseminating Bradley Wealth Confidential Information and Trade Secrets;

(e) An award of damages in an amount to be determined at trial, including without limitation, direct, consequential, actual, incidental, and compensatory damages;

(f) Disgorgement of money received by Defendants as a result of the breach of their fiduciary duties;

(g) An award of reasonable attorneys' fees, as authorized by 18 U.S.C. § 1836(b)(3)(D), A.R.S. §§ 44-404 and 12-341.01.

(h) An award of costs and expenses Bradley Wealth has been forced to incur to identify, investigate, address, and remediate Bradley Wealth's wrongdoing; and

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

(i) Such other and further relief as the Court deems just and proper.

DATED this 2nd day of October, 2025.

PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/Jared Sutton
Bruce Samuels
Jared Sutton
Benjamin Shattuck

UB GREENSFELDER LLP

Thadford A. Felton
(*pro hac vice* application forthcoming)

*Attorneys for Bradley Wealth, LLC*