**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley Wealth LLC, | No. CV-25-03659-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Brandon Scott, et al., | |
| Defendants. | |

Before the Court is a discovery dispute regarding Plaintiff's request seeking a forensic examination of Defendants' electronic devices. (Doc. 72.) The Court construes this filing as Plaintiff's Motion to Compel. The Court will deny the Motion.

## I.

Plaintiff Bradley Wealth, LLC is a Scottsdale-based financial advisory firm that has provided investment and financial planning services since 2009. (Doc. 2 at 1.) On September 9, 2025, three employees—Brandon Scott, Alex Cohen, and Jacob Hall—abruptly resigned. (*Id.* at 4.) Less than a month later, on October 2, 2025, Plaintiff filed this action against Scott, Cohen, Hall, and their new firm, 3Roots Wealth Partners, LLC. (Doc. 1.) The complaint asserts numerous claims, including trade secret misappropriation under federal and state law, computer fraud, breach of contract, breach of fiduciary duty, aiding and abetting, tortious interference, conversion, civil conspiracy, and unjust enrichment. (*Id.*)

On October 7, 2025, the Court granted a narrow injunction prohibiting Defendants

from using Plaintiff's trade secrets or confidential information to contact clients. (Doc. 12.) A few weeks later, the Court entered the parties' stipulated preliminary injunction on similar terms. (Doc. 26.)

In November 2025, Defendants filed an amended answer and counterclaims against Bradley Wealth, LLC, Michael Bradley, and several related entities. (Doc. 33.) The counterclaims assert breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, unjust enrichment, and declaratory relief. (*Id.*) Defendants also seek relief under A.R.S. § 29-3701, as well as accounting and indemnification. (*Id.*) The Court has since adjudicated two discovery disputes: a motion to intervene from a nonparty who sought clarity on the terms of the injunction (Doc. 43) and a motion to quash subpoenas (Doc. 54).

**II.**

District courts have broad discretion in controlling discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Under Federal Rule of Civil Procedure 34(a), a party may request another party to produce, and permit it to inspect, sample, test, and copy electronically stored information ("ESI") so long as it is within the scope of Rule 26(b). *See* Fed. R. Civ. P. 34. This is not meant to create a "routine right of direct access to a party's electronic information system." *Juul Labs, Inc. v. Chou*, No. 2:21-CV-03056-DSF-PDX, 2022 WL 2161062, at *1 (C.D. Cal. Apr. 19, 2022) (citation modified). Instead, "'[a] forensic examination of an opposing party's computer is considered an extraordinary remedy.'" *Id.* at *2 (quoting *MGA Ent., Inc. v. Nat'l Prods. Ltd.*, No. CV 10-07083 JAK (SSx), 2012 WL 12886446, at *2 n.2 (C.D. Cal. Jan. 26, 2012)).

"The Ninth Circuit has not provided a specific standard for when a Court should order a forensic examination." *P&B Franchise, LLC v. Dawson*, No. CV-23-00784-PHX-SMB, 2024 WL 326956, at *2 (D. Ariz. Jan. 29, 2024). "However, several courts within the Circuit have only found forensic imaging warranted where there is more than a suspicion that the opposing party has intentionally destroyed evidence or

committed other discovery misconduct." *Id.* (collecting cases).

Courts also "consider whether the examination will reveal relevant information that is proportional to the needs of the case given any possible privacy or confidentiality concerns." *Citizens Bus. Bank v. Mission Bank*, No. 5:22-CV-01473-FLA (SPX), 2024 WL 3363593, at *4 (C.D. Cal. Mar. 15, 2024). "The party seeking to compel the forensic examination must also demonstrate that the benefit outweighs the burden." *Id.*

### III.

Plaintiff requests a Court order compelling a forensic examination of Defendants' electronic devices using the following framework. The requested order reads as follows:

> (1) Defendants shall identify all electronic devices used during the period of September 1, 2025, through October 31, 2025.
> (2) The Parties shall agree upon a neutral forensic examiner to conduct the examination of the identified devices.
> (3) The Parties shall enter into a protocol reasonably designed to protect attorney-client communications and the confidentiality of 3Roots customers who were not formerly customers of Bradley Wealth. The temporal scope of the examination shall be limited to data existing on Defendants' devices between September 1, 2025, and October 31, 2025.

(Doc. 72 at 4.)

Plaintiff argues that this framework will not provide "unrestricted access to Defendants' devices." (*Id.*) Plaintiff notes that "Defendants admit they maintained Bradley Wealth customer contact information on their personal cellphones." (*Id.* at 3 (citing Doc. 22 at 36-37 ¶¶ 14-15).) Defendants kept "a Tops Down report created by Defendant Scott in June 2025 containing the name and approximate AUM of every Bradley Wealth customer." (*Id.* (citing Doc. 22 at 38, 46-47 ¶¶ 21, 78-79).) Plaintiff further argues that Defendants gained unauthorized access to Plaintiff's systems after resigning and through September 29, 2025, resulting in thousands of allegedly deleted or modified documents and emails and hundreds of accessed emails and attachments. (*Id.*)

Defendants respond that those points do not justify compelled forensic imaging of their personal devices. Although they admit that they maintained customer contact information on their cellphones, they contend Plaintiff "encouraged employees to use their

personal devices for work and did not treat client contact information as confidential." (*Id.* at 6 (citing Doc. 22 at 36-37 ¶¶ 14-15).) They further assert that the "Tops Down Report is similarly not confidential and was created by Defendants themselves in the event Bradley or Bradley Wealth lost their licenses." (*Id.* (citing Doc. 22 at 14-15, 38-39 ¶¶ 18-25).) And they dispute Plaintiff's characterization of the post-resignation access evidence, arguing Plaintiff's supporting declaration is "misleading" because it "(1) references files that were already on their computers and accessed as part of their normal workday on September 9, 2025, and (2) does not include any allegation that Scott, Cohen or Hall downloaded or transferred any confidential Bradley Wealth files (and they did not)." (*Id.*)

The Court agrees with Defendants that compelled forensic imaging of their personal electronic devices is a drastic and extraordinary remedy that is not warranted on this record. *See Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH(KSC), 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018) ("Forensic examination is generally regarded as a drastic step." (citation modified)). Plaintiff's proposed protocol narrows the request in some respects, but it does not solve the basic problem: Plaintiff has not made a sufficient showing that searching Defendants' personal devices is likely to uncover relevant evidence unavailable through less intrusive means.

To begin, Plaintiff has not identified what confidential or trade secret information it believes remains on Defendants' personal devices, as opposed to information already available from other sources. That matters because the Stipulated Preliminary Injunction prohibits Defendants from "[c]ontacting or soliciting, in any way, form, or manner, any current or former Bradley Wealth client or potential client using Bradley Wealth's Confidential Information." (Doc. 26 at 1.) Yet Plaintiff's Motion does little more than broadly assert that Defendants had client information and allegedly accessed Plaintiff's systems after resigning. (*See* Doc. 72 at 3-4.)

Nor has Plaintiff made the stronger showing of misconduct that courts typically require before ordering forensic imaging. Plaintiff points to Defendants' possession of client contact information, the Tops Down report, and evidence of post-resignation system

activity. But those facts, even taken together, do not amount to specific, concrete evidence that Defendants concealed, destroyed, or wrongfully withheld discoverable ESI on their personal devices. At most, they support Plaintiff's suspicion that relevant information may exist there. That is not enough. *See Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12cv2472-AJB(KSC), 2013 WL 5212013, at *2 (S.D. Cal. Sep., 13, 2013) ("[A]bsent specific, concrete evidence of concealment or destruction of evidence, courts are generally cautious about granting a request for a forensic examination of an adversary's computer." (citation modified)).

Defendants, for their part, offer an alternative explanation—that the activity reflects access to files already on their work computers during the ordinary course of September 9, 2025, and does not show that any confidential Bradley Wealth files were downloaded or transferred. (Doc. 72 at 5-6.) At this stage, the Court need not resolve that factual dispute. It is enough that Plaintiff's evidence does not clearly establish the kind of intentional spoliation or discovery misconduct that would justify direct forensic access to an adversary's personal devices. *See Juul Labs*, 2022 WL 2161062, at *2.

Proportionality and privacy concerns further weigh against the request. Even with a neutral examiner and a time limitation, compelled imaging of personal phones and other personal devices risks exposure of substantial private material. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 737 (9th Cir. 2024) (noting that in the context of a motion to compel a forensic examination of phones, "there is a strong privacy interest in the contents of mobile phones"); *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (collecting cases considering privacy in the proportionality analysis). Plaintiff has not shown that the likely benefit of that intrusion outweighs the burden here.

That is especially so because Plaintiff already has Defendants' work laptops in its possession. (*See* Doc. 72 at 6.) Those devices are the more obvious and less intrusive source for determining what Defendants accessed, retained, or used while employed by Plaintiff and around the time of their departure. Plaintiff has not adequately explained why

examination of those work laptops, together with ordinary document discovery and other available discovery tools, is insufficient before resorting to imaging personal devices.

For these reasons, Plaintiff has not satisfied its burden to show sufficient misconduct to justify the "extraordinary" and "drastic step" of compelled forensic examination of Defendants' personal devices. The Court, in its discretion, will therefore deny the request to compel this discovery.

**IT IS THEREFORE ORDERED denying** Plaintiff's Motion to Compel (Doc. 72).

Dated this 1st day of April, 2026.

Michael T. Liburdi
United States District Judge